UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MATSUSHITA ELECTRIC** | **CIVIL ACTION** |
| **CORPORATION OF AMERICA** | |
| | |
| **versus** | **NO. 04-3046** |
| | |
| **ROBERT L. ADAMS** | **SECTION C** |

## ORDER AND REASONS

Before this Court is Matsushita Electric Corporation of America's ("MECA") Motion for Partial Summary Judgment as to Counts One, Three, Eight, Eleven, and Twelve of its Complaint for Declaratory Relief against Robert L. Adams. Count One requests this Court to issue a declaratory judgment that the claims threatened by Mr. Adams against MECA are barred by the doctrine of res judicata, including issue preclusion. (Rec. Doc. 1 at 18.) Count Three seeks a declaratory judgment that the claims threatened by Mr. Adams against MECA are barred by the statute of limitations and the doctrine of laches. (Rec. Doc. 1 at 21.) Count Eight seeks a declaratory judgment that MECA did not owe or breach any fiduciary duty to Mr. Adams or Axcess. (Rec. Doc. 1 at 28.) Counts Eleven and Twelve request this Court enter a declaratory judgment that neither Mr. Adams nor Axcess has a claim against MECA for securities fraud, or lender liability, respectively. (Rec. Doc. 1 at 32.)

**I. Background**

Axcess Global Communications of American Corp., Axcess Global Communications Corp, and Axcess USA Corp. (collectively "Axcess") were companies that designed and developed wireless data distribution systems. (Rec. Doc. 54 at 1.) In 1994, Axcess and Matsushita Electric Industrial Co., Ltd. ("MEI"), MECA's parent company, agreed to be partners in the distribution and marketing of Axcess's pager technology. In March 1996, MECA and Axcess entered into a Loan and Security Agreement (Rec. Doc. 54, Ex. 1), pursuant to which MECA loaned Axcess $3.5 million. MEI was not a party to those agreements. The business relationship between MEI and Axcess deteriorated in 1996 and 1997, and the relationship was finally terminated in 1997. Until this time, Mr. Adams was Axcess's chairman. He was replaced by Mr. Ronald Goux as chairman, but remained the president and majority shareholder of Axcess. (Rec. Doc. 7 at 11; Rec. Doc. 54 at 2-3; Rec. Doc. 54, Ex. 5 at 72).

In December 1997, Axcess Global Communications of American Corp., Axcess Global Communications Corp, and Axcess USA Corp. (collectively "Axcess"), filed suit against MEI in Louisiana state court alleging sixteen causes of action and seeking over $750 million in damages in connection with the development and marketing of a pager system (the "Louisiana Action"). In spite of its representations that it had no claims against MECA, (Rec. Doc.. 54, Ex. 16 at 2), in the Louisiana Action, Axcess alleged that MECA engaged in wrongdoing in a conspiracy with MEI to force Axcess into bankruptcy. (Rec. Doc. 7, Ex. 1 at ¶ 95; Rec. Doc. 7, Ex. 2 at 53.) At the end of the trial, the judge instructed the jury on the conspiracy charges, stating that MEI was liable for any wrongdoing on the part of MECA if the jury found that a conspiracy existed. (Rec. Doc. 7, Ex. 3 at 6.) After the trial, the jury returned an 11-1 verdict against Axcess for its claims against MEI for fraud, breach of fiduciary duty, bad faith breach of contract, and unfair trade practices. (Rec. Doc.

7, Ex. 4.) Axcess voluntarily dismissed its remaining claims against MEI. *Id.*

In 1998, MECA filed suit in New York against Axcess to collect monies loaned under the Loan and Security Agreement (the "New York Action"). (Rec. Doc. 54 at 3.) In April 2001, Axcess filed for Bankruptcy in the Eastern District of Louisiana, and the New York Action was stayed by both the Axcess Bankruptcy and a stipulation agreed to by the parties. (Rec. Doc. 54, Ex. 10; Rec. Doc. 54, Ex. 13.) In July 2002, Mr. Adams replaced Mr. Goux as chairman of Axcess. (Rec. Doc. 54, Ex. 11.) Mr. Adams proceeded to purchase any potential claims Axcess had against MECA for $50,000 plus a percentage of the recovery. (Rec. Doc. 54 at 5; Rec. Doc 54, Ex. 16 at 5-6.) Among other claims, Mr. Adams bought all of Axcess's potential claims against MECA in connection with "the Acess Entities' efforts to develop and market a new RBDS pager technology." (Rec. Doc. 7, Ex. 32 at 2.) Mr. Adams then began to threaten to sue MECA for both the claims he purchased from Axcess and for his own personal claims. (Rec. Doc. 1, Ex. I; Rec. Doc. 1, Ex. J.)

In response to these threats, MECA filed this action for declaratory judgment. MECA then filed this Motion for Partial Summary Judgment. In May 2005, Mr. Adams filed for bankruptcy in the Western District of Louisiana, which stayed this litigation. (Rec. Doc. 37.) In August 2005, MECA filed a motion to reopen this case for the purpose of resolving the Motion for Partial Summary Judgment based on United States Bankruptcy Judge Gerald Schiff's Order lifting the automatic stay in Mr. Adams bankruptcy case for the purpose of allowing MECA's motion for partial summary judgment to be resolved. (Rec. Doc. 40.) The Court granted MECA's motion and this case was reopened for the limited purpose of resolving MECA's motion for partial summary judgment. (Rec. Doc. 41.)

**II. Standard of Review**

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-48 (1986); *see also Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co*., 974 F.2d 646, 649 (5th Cir. 1992).

**III. Analysis**

**A. Ability of This Court to Adjudicate Claims**

In response to the motion for summary judgment, Mr. Adams first argues that the stipulation in the New York Action and the automatic stay in the ongoing Axcess Bankruptcies

stay this litigation. This Court must determine whether it can reach the merits of this Motion or whether resolution of this Motion is barred by the stipulation in the New York Action or the stay in the Axcess bankruptcies. The New York Action was stayed due to the Axcess bankruptcies. (Rec. Doc. 54, Ex. 10 at 2 .)  The stipulation confirmed that the New York Action was stayed by the automatic stay. (Rec. Doc. 54, Ex. 13 at 1.) Once Mr. Adams purchased Axcess's potential claims against MECA out of the Axcess's estate, the property ceased to belong to Axcess's estate. Thus, the stay was lifted as to those claims. *See* 11 U.S.C. § 362(c)(1) (stay of an act against property of the estate continues until property is no longer property of the estate); *Matter of Brady, Texas, Mun. Gas Corp.*, 936 F.2d 212, 218 (5th Cir. 1991) (the automatic stay terminates when the debtor's property is no longer property of the estate); *In re North Shore & Central Illinois Freight Co.*, 30 B.R. 377, 378 (Bkrtcy. Ill. 1983) (stay provisions of Section 362 are inapplicable as far as it concerns property which is not part of the estate and which does not belong to the debtor). This Court finds that there is no stay precluding the resolution of this Motion for Partial Summary Judgment.

**B. Count One**

In its Motion for Partial Summary Judgment, MECA requests this Court to grant its motion as to Count One of its Complaint, which requests the Court to issue a declaratory judgment that the claims threatened by Mr. Adams against MECA are barred by the doctrine of res judicata, including issue preclusion.

When determining the preclusive effect of a prior state court judgment, a federal court "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School*

*Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984). In Louisiana, if a valid and final judgment is in favor of the defendant, "all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action" between the same parties. A valid and final "judgment in favor of either the plaintiff or the defendant is conclusive" between the same parties, "in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment." LSA-R.S. 13:4231. Additionally, a "party shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation." La. Code. Civ. Proc. art. 425.

Five elements are required for res judicata to apply: (1) the prior judgment is valid; (2) the prior judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. *Spezio v. Spezio*, 857 So.2d 5, 7 (La.App. 4 Cir. 2003).

This Court finds that the verdict rendered in the Louisiana Action is a valid and final judgment. A judgment is "valid" when it is rendered by a court with jurisdiction over the subject matter and parties of the first suit, after proper notice. See Comment (d) to La. R.S. 13:4231. It is undisputed that the judgment rendered by the state court in the Louisiana Action was valid.

A judgment is final when it "disposes of the merits in whole or in part." *Id*. In the Louisiana Action, Axcess dropped all but five of their sixteen claims, and the court entered a directed verdict for all of those claims, and dismissed them with prejudice. (Rec. Doc. 7, Ex. 28 at 104, 108-110; Rec. Doc. 7, Ex. 4.) The jury found for MEI on the remaining claims. (Rec.

Doc. 7, Ex. 4.) MECA is correct when it states that a dismissal of claims with prejudice is considered a final and binding decision for purposes of applying res judicata principles. *Leon v. Moore*, 731 So.2d 502, 505 (La.App. 1st Cir. 1999). Thus, the dismissal with prejudice of Axcess's eleven claims is considered a final judgment. MECA is also correct when it states that a judgment is final under Louisiana's res judicata statute once the deadline for filing a timely appeal lapses. *Charpentier v. BG Wire Rope & Slings, Inc.*, 174 B.R. 438, 439 (E.D.La 1994). Because a judgment denying Axcess's motion for a new trial was not appealed, the verdict in the Lousiana Action became final on July 7, 2003. (Rec. Doc. 7, Ex. 30.)

For the doctrine of res judicata to bar both Axcess's and Mr. Adams's claims, this Court must also find that Mr. Adams and MECA were, in effect, the same parties to the Louisiana Action. The requirement that the parties to both actions be "the same" does not require that they have the same identity, only that they either appear in both suits in the same capacity, or that the parties in the second suit be in privity with the parties in the first. *Middleton v. Jefferson*, 707 So.2d 454, 456 (La. App. 5th Cir. 1998); *Condrey v. Howard*, 679 So.2d 563, 567 (La. App. 2d Cir. 1996). Privity exists in three circumstances: "(1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit." *Condrey*, 679 So.2d at 567.

MEI and MECA were in privity with each other in the Louisiana Action. In the Louisiana Action, Axcess presented evidence of MECA's allegedly wrongful conduct as a basis for which to hold MEI liable. (Rec. Doc. 7, Ex. 28 at 134-137; Rec. Doc. 7, Ex. 1 at ¶ 133.) MEI defended conspiracy claims for which it could be held liable for MECA's conduct. (Rec. Doc. 7, Ex. 28 at

134-137.) Moreover, the lawsuit was based in part on two agreements made between MECA and Axcess. (Rec. Doc. 7, Ex. 1 at ¶¶ 86-87; Rec. Doc. 7, Ex. 11; Rec. Doc. 7, Ex. 12.) For these reasons, the Court finds that MEI adequately represented MECA's interests in the Louisiana Action.[1]

This Court also finds that Mr. Adams is in privity with Axcess to the Louisiana Action. First, with respect to claims purchased from Axcess by Mr. Adams, Mr. Adams is in privity with Axcess because Mr. Adams became the successor in interest to Axcess's interest in the claims when he purchased them.[2] Moreover, to the extent that Mr. Adams may attempt to assert complaints he purchased from Axcess, he is appearing in the same "capacity" as Axcess did in the Louisiana Action. *See Middleton v. Jefferson*, 707 So.2d at 456 (holding that someone claiming damages on behalf of the corporation was appearing in the same capacity as the corporate entity, thus triggering res judicata). With respect to any other claims Mr. Adams may have, this Court finds that Mr. Adams was in privity with Axcess in the Louisiana Action because his interests were adequately represented by Axcess in the Louisiana Action. Mr. Adams was the president and majority shareholder of Axcess, and participated in and directed the activities giving rise to Axcess' claims in the Louisiana Action. Moreover, Mr. Adams testified

---

[1] Mr. Adams points to MECA's statement in other litigation that "[n]either Mr. Adams nor MECA are parties to the Louisiana action" and argues that this statement supports a finding that the parties were not in privity with the parties to the Louisiana Action, and thus, no claims are barred by res judicata. The Court finds that this statement is irrelevant. MECA and Mr. Adams were not parties to the Lousiana Action. The issue before this Court is whether Mr. Adams and MECA can be treated as parties to the Louisiana Action for purposes of res judicata. Mr. Adams presents no other evidence supporting the argument that MECA was not in privity with MEI in the Louisiana Action, such that MECA cannot be considered a party to that Action.

[2] Mr. Adams bought all of Axcess's potential claims against MECA that relate to "the Axcess Entities' efforts to develop and market a new RDS pager technology." (Rec. Doc. 7, Ex. 32 at 2.)

-8-

that if Axcess prevailed in the Louisiana Action, he would have been awarded approximately $200 million of the damages being sought. (Rec. Doc. 54, Ex. 5 at 72-73, 76.)

For this Court to find that the doctrine of res judicata bars all of Mr. Adams' threatened claims, it must also find that the claims threatened by Mr. Adams against MECA existed at the time of final judgment in the Louisiana Action and arose out of the transaction or occurrence that was the subject matter of the Louisiana Action. The Court finds that these claims existed at the time of the final judgment in the Louisiana Action and that these claims are based on the same transaction that formed the basis of the Louisiana Action. All of Mr. Adams claims (including his personal claims and claims he bought from Axcess) are based on the companies' agreement to develop, distribute, and market RDS pager technology. This transaction was the basis of the claims brought by Axcess against MEI in the Louisiana Action in December 1997. (Rec. Doc. 7, Ex. 1.) Because all of Mr. Adams threatened claims arise out of the same transaction that formed the basis of the Louisiana Action, they are barred by La. Code. Civ. Proc. art. 425. Although "a plaintiff's claims may constitute separate causes of action, if they arise out of the same transaction or occurrence, they must be asserted in the same action." *Westerman v. State Farm Mut. Auto. Ins. Co.*, 834 So.2d 445, 448 (La. App. 1 Cir. 2002). The purpose of Article 425 " is to encourage plaintiffs to join all possible defendants in a single litigation and to prevent relitigation of issues rather than claims." *Hall v. Sinn, Inc.*, 102 Fed. Appx. 846, 848 (5th Cir. 2004). Mr. Adams has not produced evidence showing the existence of a genuine issue for trial on this matter. Therefore, this Court finds that all of Mr. Adams threatened claims against MECA are barred by the doctrine of res judicata, and grants summary judgment in favor of MECA as to Count One of its Complaint.

**Count Three - Statute of Limitations**

MECA alternately requests this Court to find that the claims threatened by Mr. Adams against MECA are barred by the statute of limitations and the doctrine of laches. In light of the Court's grant of summary judgment as to Count One, this request is moot.

**Count Eight - Fiduciary Duty**

Count Eight seeks a declaratory judgment that MECA did not owe or breach any fiduciary duty to Mr. Adams or Axcess. In its brief, MECA argues that it did not owe Mr. Adams or Axcess any fiduciary duty, but even if it did, Adams' threatened claims for breach of fiduciary duty are time barred. (Rec. Doc. 7, Mem. in Supp. at 28.) In response, Mr. Adams states that MECA does not "present any argument or evidence in its Memorandum in support of a Motion for Summary Judgment on Counts 8, 11, and 12 of its Complaint." (Rec. Doc. 54 at 12.)

This Court agrees with MECA and finds that it did not owe Mr. Adams any fiduciary duty. The Sales and Revenue Sharing Agreement and Loan Agreement, which were signed by Mr. Adams, expressly negate the existence of any fiduciary relationship between Axcess (or Mr. Adams) and MECA. The Loan Agreement expressly states that MECA did "not undertake or assume any responsibility or duty" to Axcess or any third party. (Rec. Doc. 54, Ex. 12 at Art. 9, Sec. 9.6.) Similarly, the Sales and Revenue Sharing Agreement defined the relationship between the parties as that of "independent contractors." (Rec. Doc. 54, Ex. 11 at Art 10, Sec. 10.1.) Nothing in the Agreement "shall be construed to create a partnership, joint venture, franchise, employment or agency relationship between the parties." *Id*. Under New York law, which governs both of the agreements, a claim for breach of fiduciary duty is barred if the agreement between the parties expressly negates the existence of such a relationship. *Valjean Mfg., Inc. v.*

*Michael Werdiger, Inc.*, 2004 WL 1948752, *4 (S.D.N.Y. 2004). Thus, this Court finds that MECA owed no fiduciary duty to Axcess or Mr. Adams and grants MECA summary judgment with respect to Count Eight of its Complaint.

**Count Eleven - Securities Fraud**

Counts Eleven requests this Court enter a declaratory judgment that neither Mr. Adams nor Axcess has a claim against MECA for securities fraud. (Rec. Doc. 1 at 32.) MECA argues in its opening brief that there was never a contract for sale or sale of securities between MECA and Mr. Adams, but even if there were, Mr. Adams's claims for securities fraud are time barred. (Rec. Doc. 7, Mem. in Supp. at 27.) In response, Mr. Adams states that MECA does not "present any argument or evidence in its Memorandum in support of a Motion for Summary Judgment on Counts 8, 11, and 12 of its Complaint." (Rec. Doc. 54 at 12.) This Court agrees with MECA. After reviewing the record, this Court finds that there was never a contract for the sale of securities between Mr. Adams (or Axcess) and MECA. Therefore, this Court grants summary judgment in favor of MECA as to Count Eleven of its Complaint.

**Count Twelve - Lender Liability**

Counts Twelve requests this Court enter a declaratory judgment that neither Mr. Adams nor Axcess has a claim against MECA for "lender liability." MECA argues that Mr. Adams cannot assert a claim for lender liability because lender liability is not an independent cause of action under Louisiana law - lender liability refers to a type of litigation based on lending contracts. (Rec. Doc. 7, Mem. in Supp. at 24 n. 39.) In light of the grant of summary judgment as to Count One, this Court finds this request moot, as any claims based on any loans or lending agreements between MECA and Axcess or Mr. Adams are barred by res judicata.

**III. Conclusion**

For these reasons, IT IS ORDERED that Matsushita Electric Corporation of America's Motion for Partial Summary Judgment is PARTIALLY GRANTED as to Counts One, Eight, and Eleven of its Complaint for Declaratory Relief against Robert L. Adams. IT IS FURTHER ORDERED that Matsushita Electric Corporation of America's Motion for Partial Summary Judgment is DISMISSED as MOOT as to Counts Three and Twelve of its Complaint for Declaratory Relief against Robert L. Adams.

New Orleans, Louisiana, this 14th day of March, 2006.

                                                               Judge Helen G. Berrigan
                                                               United States District Judge